[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 740 
T.L. Thaggard filed a complaint in the District Court of Montgomery County seeking to evict John H. James from certain real property. The district court entered a judgment in favor of Thaggard, and James appealed to the Circuit Court of Montgomery County. Thaggard filed a motion for a summary judgment in the circuit court. Thaggard also amended his complaint against James to seek damages for fraud and for James's failure to pay amounts owed pursuant to a mortgage.
On June 12, 2000, the circuit court entered a partial summary judgment in favor of Thaggard, ordering in that judgment that James pay Thaggard damages totaling $13,590.97. In that order, the trial court set a hearing date to consider Thaggard's motion to evict James from the property at issue. After conducting an ore tenus hearing, the circuit court entered a judgment finding that Thaggard was entitled to immediate possession of the property; the trial court also modified the damages provision of its earlier partial summary judgment, to require James to pay a total of $12,251.67 in damages. James appeals.
The record indicates that James borrowed $15,000 from Thaggard and secured the debt with a mortgage on his home. James is married to Anna Taylor James (hereinafter "Mrs. James"), who resides in Texas. Thaggard alleged in his complaint that James claimed to be single at the time he executed the mortgage document. The mortgage document that secured James's debt to Thaggard indicates that James was an "unmarried man." James signed the mortgage document, and it is undisputed that Mrs. James did not sign the mortgage document.
James testified that his wife has lived all of her life in Texas; that she has never lived in Alabama; and that she has lived in Texas, separate from him, since September 1989. James testified that he and his wife visit each other every month.
James defaulted on the debt to Thaggard, and, on July 14, 1995, Thaggard obtained and recorded a foreclosure deed to the property. On October 31, 1996, James and Thaggard entered into an agreement whereby Thaggard agreed to lease the property to James for monthly payments of $325. James subsequently became delinquent in his monthly payments on that lease agreement, and Thaggard sought to have him evicted from the property.
James sought to avoid the eviction by claiming that the property at issue was his and Mrs. James's homestead property, and that because Mrs. James had not signed the mortgage document, that document was invalid, pursuant to the provisions of § 6-10-3, Ala. Code 1975. That code section reads: *Page 741 
 "No mortgage, deed, or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before the officer authorized by law to take acknowledgements of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgement for individuals prescribed by Section 35-4-29[, Ala. Code 1975]."
James alleges that because the mortgage document was invalid, Thaggard's deed, obtained through his foreclosure on the mortgage, was void.
In its partial summary judgment, the trial court held that Thaggard's title to the property was not void because of Mrs. James's failure to sign the mortgage document. In entering its June 12, 2000, partial summary judgment, the trial court noted that James, a married man, had signed the mortgage document that stated he was unmarried, that Mrs. James had never resided in Montgomery, and that Texas tax records indicated that Mrs. James owns a residence in Texas and that she had claimed a homestead exemption on that Texas property.
After the trial court entered its partial summary judgment on the issue of the validity of the mortgage document and Thaggard's foreclosure deed, James filed a "motion to reconsider" the partial summary judgment. In support of that motion, James submitted an affidavit by Mrs. James. In her affidavit, Mrs. James stated that she and James had purchased the property at issue in 1990; that they intended that it be their homestead property; that she is a professor at a law school in Houston, Texas, and lives and works in Texas for nine months each year; that she usually spends summers in Montgomery with her husband; and that she and James "are looking forward to spending more time together in Alabama, after [their] retirement."
In entering its final judgment, the trial court denied James's "motion to reconsider" the partial summary judgment, stating that James's submission of Mrs. James's affidavit was not timely filed with the court. James does not challenge that ruling on appeal. We note that the decision whether to admit or to exclude the affidavit was within the trial court's discretion. Middaugh v. City of Montgomery, 621 So.2d 275
(Ala. 1993). We cannot say the trial court erred in excluding Mrs. James's affidavit as being untimely filed.
On appeal, James argues that Mrs. James's absence from the property in Montgomery is temporary and that a temporary absence is not to be construed as an abandonment of her homestead rights. James argues that the trial court erred in refusing to declare the mortgage he executed in favor of Thaggard invalid pursuant to § 6-10-3, Ala. Code 1975, because it lacks Mrs. James's signature.
A trial court's findings of fact based on ore tenus testimony are entitled to a presumption of correctness on appeal, and those findings of fact will not be reversed absent a showing that they amount to an abuse of the trial court's discretion. Ex parte Pielach, 681 So.2d 154 (Ala. 1996). An appellate court may not substitute its own judgment for that of the trial court if the trial court's judgment is supported by reasonable inferences that may be drawn from the evidence. Id.
 "A `homestead' is generally defined as the home or house where a family resides, where the head of the family dwells, and any adjoining or appurtenant land used for the family's comfort and sustenance. Skipworth v. Skipworth, *Page 742 383 So.2d 524 (Ala. 1980); Gardner v. Roberts, 565 So.2d 638 (Ala.Civ.App. 1990). The purpose of the homestead exemption is, within certain limitations, to protect and secure a home for one's family, regardless of financial circumstances. First Alabama Bank of Dothan v. Renfro, 452 So.2d 464 (Ala. 1984). To qualify for the protection afforded by Alabama's homestead exemption, one must be a `resident' and must, in fact, occupy a `home' in the state of Alabama. Brinson v. Edwards, 94 Ala. 447, 10 So. 219 (1891); Gardner v. Roberts[, supra]."
Sims v. Cox, 611 So.2d 339, 340 (Ala. 1992) (emphasis added).
The burden of proving the invalidity of a mortgage or other indebtedness on homestead property pursuant to § 6-10-3 is on the person seeking to set aside the mortgage or other indebtedness. Rhodes v.Schofield, 263 Ala. 256, 82 So.2d 236 (1955). In order for a spouse to be entitled to protection under § 6-10-3, Ala. Code 1975, the property at issue must be that spouse's actual place of residence. Sims v. Cox, supra; Worthington v. Palughi, 575 So.2d 1092 (Ala. 1991); Gowens v.Goss, 561 So.2d 519 (Ala. 1990). However, a temporary absence from the property will not be construed as an abandonment of the homestead exemption if the spouse seeking the protection of § 6-10-3 intends to return to the property. Gowens v. Goss, supra.
In this case, the trial court determined that Mrs. James has never lived in Montgomery in the property at issue; thus, Mrs. James is not a "resident" who occupies a home in Alabama. See Sims v. Cox, supra, and § 6-12-2, Ala. Code 1975. The trial court also noted that Mrs. James has claimed a homestead exemption for the property she occupies in Texas. Given the evidence in the record, we cannot say the trial court erred in making its factual determinations. Thus, we cannot say that the trial court erred in concluding that Mrs. James did not qualify for the protection afforded by Alabama's homestead exemption, and, therefore, that James could not avoid the mortgage indebtedness and the foreclosure deed for that reason.
Further, we conclude that, in this case, equitable principles also support the trial court's judgment. "The requirement of a spouse's signature on a conveyance is intended to protect that spouse from a conveyance of the homeplace without his or her consent." Sims v. Cox,611 So.2d 339, 341 (Ala. 1992). See also, Worthington v. Palughi, supra;Gowens v. Goss, supra.
 "We cannot assent to the proposition that a person can obtain another's money upon the faith and assurance of a mortgage security, and, the next moment after he receives and appropriates it, go into a court of conscience, where the maxim that he who seeks equity must do equity has ever been vigorously upheld and applied, and ask that court to cancel the security as a cloud on his title, still retaining the money, and making no offer to return or repay it.
 "In Loxley v. Douglas, [121 Ala. 575, 577, 25 So. 998, 999 (1898)], the reason given for applying the said maxim was: `This requirement is upon the consideration that to allow one to retain the benefits of an agreement, which he repudiates, when by doing so he derives an advantage, while the uncomplaining party is subjected to loss, would be plainly inequitable.'"
Leonard v. Whitman, 249 Ala. 205, 208, 30 So.2d 241 (1947).
In this case, the husband borrowed money and, acting as an "unmarried man," executed a mortgage securing that indebtedness. He defaulted on that mortgage and now seeks to avoid both the debt and *Page 743 
the foreclosure deed by utilizing a homestead exemption for his wife in this state. However, his wife, Mrs. James, resides in Texas and has claimed a homestead exemption on property in that state. We conclude that under the facts of this case, declaring the mortgage and the foreclosure deed based on that mortgage invalid for the reasons argued by James would be inequitable. The judgment of the trial court is affirmed.
AFFIRMED.
Yates, P.J., and Crawley, Pittman, and Murdock, JJ., concur.